UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCHIFF FAMILY HOLDINGS NEVADA LIMITED PARTNERSHIP | CIVIL ACTION |
| VERSUS | NO. 18-3891 |
| DAVID PAUL VICKNAIR, ET AL. | SECTION "R" (2) |

## **ORDER AND REASONS**

Before the Court are defendants' motions for summary judgment on plaintiff Schiff Family Holdings Nevada Limited Partnership's (SFHN's) claim for legal malpractice.[1] The Court finds that SFHN's legal malpractice claim is perempted. There is no disputed factual question that more than one year before filing this lawsuit SFHN had knowledge of (1) defendants' alleged malpractice, (2) its damages, and (3) the relationship between defendants' malpractice and its damages. The Court therefore grants summary judgment in favor of all defendants.

---

[1] R. Doc. 27; R. Doc. 28; R. Doc. 30.

## I. BACKGROUND

This case arises out of allegations of legal malpractice.[2] Nonparties Lidia Pollard and Robert Schiff were originally engaged in a joint venture to renovate and sell homes damaged by Hurricane Katrina in the New Orleans area.[3] Around 2013, the venture failed and litigation between Pollard and Schiff ensued.[4] On August 2, 2013, Pollard was awarded a judgment against Schiff in the Civil District Court for the Parish of Orleans in the amount of $685,176.52, plus interest and costs.[5] Pollard then attempted to enforce this judgment against Schiff.

As part of this effort, in March 2015 Pollard filed a post-judgment motion to cancel a mortgage Schiff had granted plaintiff SFHN, on the grounds that the mortgage note was defective.[6] Schiff owns a portion of SFHN.[7] On the relevant mortgage note, Schiff incorrectly named the mortgagee as "Schiff Family Holdings Limited Partnership," accidentally omitting the word "Nevada."[8] Pollard argued in her motion that the

---

[2] R. Doc. 1.
[3] R. Doc. 27-2 at 1 ¶ 2; R. Doc. 32-4 at 1 ¶ 2.
[4] *See* R. Doc. 27-2 at 1 ¶ 1; R. Doc. 32-4 at 1 ¶ 1.
[5] *Id.*
[6] R. Doc. 28-2 at 4; R. Doc. 31 at 2; R. Doc. 28-5 at 19-21.
[7] R. Doc. 31-1 at 1.
[8] R. Doc. 28-5 at 20.

2

mortgage was defective because the listed mortgagee technically did not exist.⁹ The civil district court dismissed the motion on procedural grounds.¹⁰

In April 2015, Schiff's attorney in this state court proceeding, defendant David Vicknair, looked into how they could amend the mortgage to remedy the problem Pollard identified in her post-judgment motion.¹¹ Vicknair enlisted the help of defendant Brennan Pizzolato, a transactional and real estate attorney.¹² Pizzolato advised Vicknair that there were two options for amending the mortgage: (1) they could prepare a "Notarial Act of Correction," where the original notary to the mortgage would unilaterally prepare and execute an instrument to change the name of the mortgagee; or (2) they could have a new, substitute notary prepare an "Act of Correction," which would be signed by the parties to the original instrument and notarized.¹³ Vicknair instructed Pizzolato to prepare a corrective instrument using a new, substitute notary.¹⁴ Pizzolato prepared this document.¹⁵ Vicknair then filed the document Pizzolato prepared into the Orleans Parish

---

9    R. Doc. 28-2 at 4; R. Doc. 31 at 2.
10   *Id.*
11   R. Doc. 27-2 at 2 ¶ 6; R. Doc. 32-4 at 2 ¶ 6.
12   R. Doc. 27-2 at 2 ¶¶ 6-7; R. Doc. 32-4 at 2 ¶¶ 6-7.
13   R. Doc. 27-2 at 3 ¶¶ 10-11; R. Doc. 32-4 at 3 ¶¶ 10-11.
14   R. Doc. 27-2 at 3 ¶ 12; R. Doc. 32-4 at 3 ¶ 12.
15   R. Doc. 27-2 at 4 ¶ 13; R. Doc. 32-4 at 3 ¶ 13.

3

Mortgage Records on April 30, 2015.[16] The evidence before the Court indicates that Vicknair charged—and SFHN paid—legal fees for executing and recording this document.[17]

On July 2, 2015, Pollard filed a petition to cancel the mortgage in the civil district court, which was the correct procedural vehicle to attempt to invalidate the mortgage.[18] The petition restated Pollard's earlier argument that the mortgage was invalid because the mortgagee's name was listed incorrectly.[19] The petition did not mention the corrective document the defendants had filed into the mortgage records.[20] According to defendant Vicknair, after Pollard filed this petition, Schiff removed the matter to federal court.[21] After a protracted fight, the matter was eventually remanded.[22]

On January 9, 2017, Pollard filed a motion for summary judgment in the civil district court on her petition to cancel the mortgage.[23] She argued that (1) the mortgage was invalid because the name of the mortgagee was

---

[16] R. Doc. 28-5 at 12-13.
[17] *See id.* at 57 (in a May 2017 email, Schiff demanding that Vicknair "pay SFHN back" all of the fees Vicknair charged it back to the day they filed the corrective instrument).
[18] *Id.* at 14-16.
[19] *Id.* at 16.
[20] *Id.* at 14-16.
[21] R. Doc. 28-2 at 5.
[22] *Id.*
[23] R. Doc. 27-2 at 4 ¶ 15; R. Doc. 32-4 at 3 ¶ 15; R. Doc. 28-5 at 31-37.

4

listed incorrectly, and (2) the document SFHN filed into the record in an attempt to correct the mortgage was itself invalid, because it did not comply with Louisiana's procedural requirements for amending a notarial act under La. R.S. 35:2.1.[24] Pollard explained that under the statute, if the original notary on the mortgage did not herself execute the correction, the new notary must be "a Louisiana notary who has possession of the records" of the original notary.[25] Pollard argued that (1) the document SFHN filed was not executed by the original notary on the mortgage, (2) the new notary was not a Louisiana resident, and (3) there was no evidence that the new notary was in possession of the original notary's records.[26] Shortly after Pollard filed her motion for summary judgment, Schiff emailed Vicknair to alert Vicknair to the motion.[27] Schiff stated in the email that one of Pollard's arguments was that "[t]he instrument [Vicknair] prepared to correct the name [of the mortgagee] was defective."[28]

Vicknair, on behalf of SFHN, filed an opposition to Pollard's motion on March 15, 2017.[29] SFHN argued that the mortgage initially executed was

---

[24] *Id.*
[25] R. Doc. 28-5 at 35.
[26] *Id.*
[27] *See id.* at 38
[28] *Id.*
[29] *Id.* at 44-50.

5

valid because it correctly listed the mortgagor and was recorded properly.[30] SFHN further argued that the difference in SFHN's listed name in the mortgage and its actual name was not so erroneous as to be misleading.[31] Finally, SFHN argued that the corrective instrument it and Schiff had filed merely "reaffirm[ed]" the original agreement between Schifff and SFHN, and did not "alter the validity of the underlying mortgage."[32] SFHN paid Vicknair legal fees in connection with this response to Pollard's motion for summary judgment.[33]

On April 13, 2017, the civil district court entered a judgment in favor of Pollard.[34] The lone reason the court offered was that the corrective instrument Vicknair filed on behalf of Schiff and SFHN did not comply with Louisiana's procedural requirements under La. R.S. 35:2.1.[35] According to SFHN, this judgment allowed Pollard to seize the two properties that secured the mortgage.[36]

---

[30] *Id.* at 47.
[31] *Id.* at 48.
[32] *Id.* at 49.
[33] R. Doc. 31-3 at 2 ¶¶ 4-5; R. Doc. 28-5 at 39-40 (invoice for Vicknair's legal services from January 1, 2017 to February 28, 2017).
[34] R. Doc. 28-5 at 53.
[35] *Id.* at 54.
[36] R. Doc. 1 at 7 ¶ 20.

On April 12, 2018, SFHN filed a complaint for legal malpractice against (1) Vicknair, (2) Favret, LLC, the law firm Vicknair worked for at all relevant times; (3) Pizzolato; (4) Smith and Treuting, LLC, the law firm Pizzolato worked for at all relevant times; and (5) Title Stream, LLC, which employed Pizzolato as an "examining attorney" when the events of this lawsuit took place.[37] SFHN alleges that Vicknair's and Pizzolato's services deviated below the standard of care for attorneys practicing in the community, and that the organizational defendants are liable to SFHN under the doctrine of *respondeat superior*.[38] SFHN alleges that it has suffered damages in excess of $500,000, because the two properties that secured the invalidated mortgage—and which Pollard seized—had a fair market value exceeding that amount.[39]

Defendants have all moved for summary judgment.[40]

---

[37] R. Doc. 1; R. Doc. 30-1 at 1-2. SFHN originally named as a defendant Scott, Vicknair, Hair, and Checki LLC, but SFHN then moved to voluntarily dismiss this law firm on July 18, 2018. R. Doc. 11.
[38] R. Doc. 1 at 6 ¶ 19.
[39] *Id.* at 7 ¶ 20.
[40] *See* R. Doc. 27; R. Doc. 28; R. Doc. 30.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

### A. Peremption

A plaintiff asserting a legal malpractice claim must prove "(1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence." *Stanley v. Trinchard*, 500 F.3d 411, 421 (5th Cir. 2007). Here, defendants argue that SFHN's claim is perempted under La. R.S. 9:5605. That statute provides, in pertinent part:

> No action for damages against any attorney at law duly admitted to practice in this state . . . , whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed . . . within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. R.S. 9:5605(A). Because peremption is an affirmative defense, defendants bear the burden of its proof at trial. *See Ducre v. Mine Safety Appliances*, 963 F.2d 757, 760 (5th Cir. 1992). In the context of summary judgment, "the movant is required to prove, based solely on documentary evidence and without the benefit of testimony at a hearing, that there is no genuine material factual issue in dispute" that the plaintiff's claim is perempted. *Tex. Brine Co., LLC v. Dow Chem. Co.*, No. 15-1102, 2017 WL

3705811, at *4 (E.D. La. Aug. 28, 2017) (citing *Hogg v. Chevron USA, Inc.*, 45 So. 3d 991, 998 (La. 2010)).

The parties do not dispute that the alleged act of malpractice occurred within three years of SFHN's filing the complaint. They dispute only whether SFHN filed its complaint within one year from the date it discovered or should have discovered the defendants' alleged act, omission, or neglect giving rise to the malpractice claim. *See* La. R.S. 9:5605.

The Louisiana Supreme Court has explained that this one-year peremptive period for legal malpractice actions begins to run "when the plaintiff knew or should have known the existence of facts that would have enabled her to state a cause of action for legal malpractice." *Jenkins v. Starns*, 85 So. 3d 612, 621 (La. 2012). A plaintiff can state a cause of action for legal malpractice when she has actual or constructive knowledge of (1) her damage, (2) the delict, or her attorney's mistake or negligence, and (3) "the relationship" between her damage and her attorney's delict. *Id.* at 621-22. "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Id.* at 620. A plaintiff has been sufficiently damaged to trigger the prescriptive period when the plaintiff has suffered "appreciable harm as a consequence of his attorney's negligence." *Id.* at 621 n.4 (quoting *Braud v. New England Ins.*

11

*Co.*, 576 So. 2d 466, 468 (La. 1991)). It is not necessary for the plaintiff to "sustain all, or even the greater part, of the damages occasioned by his attorney's negligence" before the peremptive period begins to run. *Id.*

SFHN knew or should have known of its attorneys' alleged mistake on January 9, 2017, when Pollard filed her motion for summary judgment in the civil district court. SFHN concedes that it was aware of Pollard's motion when it was filed.[41] Pollard's motion explained that the corrective instrument defendants filed was defective and did not remedy the problem in SFHN's mortgage.[42] This information would reasonably put SFHN on notice and excite its attention that defendants committed malpractice by failing to execute this instrument properly. *See id.* at 620; *Gorman v. Billingsley*, 1999 WL 1240817, at *2, 203 F.3d 828 (5th Cir. Nov. 30, 1999) (the plaintiff had constructive knowledge of the defendant's malpractice in allowing the prescriptive period to run on his tort claim when, in the underlying litigation, his attorney was served with an answer raising the affirmative defense of prescription); *Brown v. Schonekas, Winsberg, Evans & McGoey, LLC*, 122 So. 3d 1176, 1180-81 (La. App. 4 Cir. 2013) (the plaintiff had sufficient notice of her attorney's alleged malpractice in filing an intervention when the court

---

[41] R. Doc. 31 at 6.
[42] R. Doc. 28-5 at 35.

did not have jurisdiction over it, because her adversary filed a motion to dismiss her counterclaim for lack of subject matter jurisdiction).

SFHN does not seriously contest that it knew or should have known in January 2017 of defendants' alleged malpractice. SFHN instead argues that it did not suffer any appreciable harm—and therefore did not have a cause of action against defendants—until the civil district court found the mortgage invalid on April 13, 2017.[43] SFHN filed its complaint on April 12, 2017, within one year of that judgment.[44] Defendants respond that SFHN's claim is perempted because SFHN suffered damage before the civil district court's judgment, and that it had knowledge of its cause of action before the judgment was entered.[45] The Court finds that the peremptive period began in January 2017, after Pollard filed her motion for summary judgment, because that event also provided SFHN with notice that it had suffered appreciable harm from the alleged malpractice.

SFHN suffered appreciable harm from Vicknair's filing of the defective corrective instrument in two ways. First, SFHN paid Vicknair legal fees to file the defective instrument.[46] SFHN was therefore charged for legal

---

[43] R. Doc. 31 at 5; R. Doc. 32 at 8.
[44] R. Doc. 1.
[45] R. Doc. 27-1 at 8-9; R. Doc. 28-2 at 11-13; R. Doc. 30-1.
[46] *See* R. Doc. 28-5 at 57.

13

services that proved to be useless. Second, and more importantly, the defective instrument permitted Pollard to file a motion for summary that SFHN was forced to defend. SFHN concedes that it paid legal fees in connection with its response to this motion.[47] But had Vicknair and Pizzolato executed a valid corrective document that properly amended the mortgage, Pollard's attempts to cancel the mortgage would have been thwarted after she filed her post-judgment motion, and before she ever filed her petition in state court. Thus, as a direct result of defendants' alleged malpractice, SFHN was forced to incur legal fees to defend Pollard's attack on the validity of the mortgage.

Being forced to defend against Pollard's motion for summary judgment is a type of damage that Louisiana and federal courts have recognized can trigger the peremptive period for malpractice actions. *See, e.g.*, *Rayne State Bank & Trust Co. v. Nat'l Union Fire Ins. Co.*, 483 So. 2d 987, 996 (La. 1986) (damage to the plaintiff-bank became appreciable in the context of a malpractice action when "the validity" of allegedly defective mortgages "was attacked"); *Carter v. Schott*, 707 So. 2d 1048, 1049 (La. App. 1 Cir. 1998) (damage to the plaintiff arose when adversary filed a motion to dismiss based

---

[47] R. Doc. 31-3 at 2 ¶¶ 4-5; R. Doc. 28-5 at 39-40 (invoice for Vicknair's legal services from January 1, 2017 to February 28, 2017).

on the defendant-attorney's alleged malpractice, not when a final judgment was rendered against the plaintiff); *see also Gorman*, 1999 WL 1240817, at *2 (peremption period began when adversary filed answer asserting affirmative defense of prescription).

The Louisiana Supreme Court's opinion in *Rayne* is particularly applicable to this case. There, the plaintiff-bank's attorney prepared mortgages that did not specify the location of the chattels involved, as required under Louisiana law. *Rayne*, 483 So. 2d at 989-90. When the bank attempted to foreclose on the mortgages, the debtors filed an adversary proceeding to invalidate the mortgages on several grounds, including that the mortgages were defective because they did not designate the location of the chattels. *Id.* at 990. The Louisiana Supreme Court ruled that the plaintiff suffered damages for the purposes of determining the peremptive period when the debtor first filed the action attacking the validity of the mortgages. *Id.* at 996. The court explained that "[t]his attack, which Rayne State Bank was forced to defend, was direct damage to the bank resulting from the existence of the defects, regardless of any *future* determination of further damage resulting from invalidity of the mortgages." *Id.* (emphasis in original).

15

Here, Pollard would not have been able to attack SFHN's mortgage in her motion for summary judgment had Vicknair and Pizzolato executed a proper corrective instrument. Because SFHN had to incur legal fees to defend this attack, Pollard's motion for summary judgment was "direct damage to [SFHN] resulting from the existence of the [defective corrective instrument]."[48] *Id.*; *see also Carter*, 707 So. 2d at 1049. SFHN was aware of this damage in January 2017 when Pollard filed her motion, and it incurred its legal fees in January and February 2017. Therefore, in January and February 2017, SFHN had actual or constructive knowledge of (1) her damage, (2) Vicknair and Pizzolato's alleged malpractice, and (3) "the relationship" between the two. *See Jenkins*, 85 So. 3d 620-21. Because SFHN did not bring this action until April 2018, its complaint is perempted under La. R.S. 9:5605.

### B. Title Stream, LLC's Motion for Summary Judgment

Title Stream, LLC is also entitled to summary judgment for a separate reason. Title Stream, LLC employed Pizzolato as an "examining attorney" in April 2015 when Pizzolato drafted the corrective instrument.[49]

---

[48] *See* R. Doc. 31-3 at 2 ¶¶ 4-5; R. Doc. 28-5 at 39-40.
[49] R. Doc. 30-3 at 1.

16

Title Stream, LLC argues that in addition to SFHN's claim being perempted, it cannot be held vicariously liable for Pizzolato's alleged malpractice because Pizzolato was not acting within the course and scope of her employment with Title Stream, LLC, when she drafted the corrective instrument.[50] Title Stream, LLC includes with its motion an affidavit from Malissa Munlin, its Administrator.[51] Munlin states that although Title Stream, LLC employed Pizzolato as an examining attorney at the time she drafted the corrective instrument, Title Stream, LLC did not pay or compensate Pizzolato for drafting the document.[52] Nor did it bill Vicknair or Favret, LLC for Pizzolato's work.[53]

SFHN did not respond to Title Stream, LLC's motion. SFHN thus has not presented conflicting facts that would establish a genuine dispute as to whether Title Stream, LLC is vicariously liable for Pizzolato's alleged malpractice. Summary judgment for Title Stream, LLC is therefore granted on this separate ground as well. *See Celotex Corp.*, 477 U.S. at 324-25.

---

[50] R. Doc. 30-1 at 8.
[51] *See* R. Doc. 30-3.
[52] *Id.* at 2.
[53] *Id.*

## IV. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are GRANTED. SFHN's claims against all defendants are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __17th__ day of May, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE